UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| TOMAS A. ESPINOSA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 14-482 (RDM) |
| | ) | |
| SHAUN DONOVAN, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Tomas Espinosa, an employee of the U.S. Department of Housing and Urban Development ("HUD"), brought this employment discrimination suit against the Secretary of HUD in his official capacity, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq*. Plaintiff, who is Hispanic and was born in the Dominican Republic, alleges that the HUD discriminated against him based on race and national origin by denying his requests for a lateral transfer to Boston and by failing to select him for a position in Boston. HUD now moves to dismiss in part, or in the alternative, for partial summary judgment. *See* Dkt. 4. For the reasons explained below, the motion is **GRANTED** in part and **DENIED** in part. To the extent portions of the complaint are dismissed for failure to state a claim, Plaintiff may file an amended complaint consistent with this Memorandum Opinion within 20 days, and Defendant may respond to the complaint or amended complaint within 40 days of this Memorandum Opinion.

## I.  BACKGROUND

Plaintiff began working for HUD as an auditor in 2000.  *See* Compl. ¶ 19.  By 2012, he had been promoted several times and was a supervisory auditor, grade level GS-14, in HUD's Office of Inspections and Evaluations in Washington, D.C.  *See* Compl. ¶¶ 7, 19-21; *see also* Final Agency Decision, Dkt. 1, Ex. 1 at 3 ("Admin. Decision").  He alleges that, in that role, he supervised between six and eight employees.  *See* Compl. ¶ 21.

Although the complaint alleges a single count of discrimination in violation of Title VII, *see* Compl. ¶¶ 58-65, that count rests on four possible agency actions, *see id*.  Plaintiff thus appears to assert four claims of discrimination, each based on one of the four actions.  *See id*.  Two of his claims are based on his non-selection for a supervisory auditor position in Boston.  *See* Compl. ¶¶ 61, 62.  The Boston position was advertised twice, first in February 2012 under vacancy announcement 12-HUDIG-022, *see* Compl. ¶¶ 30, 31; Dkt. 4 at 14, ¶ 2, and again in May 2012 under vacancy announcement 12-HUDIG-042, *see* Compl. ¶¶ 41, 42; Dkt. 4 at 14-15, ¶¶ 3, 4.  Plaintiff filed an application in response to the first vacancy announcement; when that announcement was cancelled in mid-May, he filed an application in response to the second vacancy announcement, which was also cancelled.  *See* Compl. ¶ 49; Dkt. 4 at 14-15, ¶¶ 2, 3, 4.

The other two claims are based on HUD's failure to grant Plaintiff's requests for a lateral transfer to Boston to fill the same position covered by the vacancy announcements.  Plaintiff requested a lateral reassignment in February 2012, but he was told instead to file an application in response to the first vacancy announcement.  *See* Compl. ¶¶ 32, 33; Dkt. 4 at 15 ¶ 5.  In June 2012, Plaintiff contacted HUD's Human Resources staff to express interest in a lateral transfer, but did not receive a response.  *See* Compl. ¶¶ 45, 46; Dkt. 4 at 15 ¶ 6.  The parties do not appear to dispute that both of these requests were effectively denied.

Plaintiff alleges that he first contacted an Equal Employment Opportunity ("EEO") counselor about the four allegedly discriminatory actions on August 17, 2012. *See* Compl. ¶ 53; Dkt. 4 at 15-16 ¶ 7. His amended administrative complaint alleged that HUD officials discriminated against him by twice failing to select him for the Boston position and by failing to grant his two requests for a lateral reassignment or transfer. *See* Admin. Decision 2-4.[1] On December 24, 2013, HUD issued a final decision concluding that these actions were not discriminatory. Admin. Decision 17. Within 90 days of receiving the final decision, Plaintiff filed this action. *See* Compl. ¶¶ 15, 16, 17; *see also* 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407(a).

## II. LEGAL STANDARD

HUD has moved to dismiss in part under Rule 12(b)(6), or in the alternative, for partial summary judgment under Rule 56.

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. When ruling on such a motion, the court "must accept the complaint's allegations as true and draw all reasonable inferences in favor of the non-moving party." *Gordon v. United States Capitol Police*, 778 F.3d 158, 163-64 (D.C. Cir. 2015). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[1] Plaintiff also asserted that HUD management discriminated against him in November 2012 by changing his job title, requiring him to report to a different supervisor, and failing to increase his grade level to GS-15. *See* Admin. Decision 1, 4-5. The claims based on the November 2012 events were dismissed at the administrative level, *see id.* at 17, and Plaintiff does not assert a claim based on those events in this litigation.

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)) (citation omitted).

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Liberty Lobby*, 477 U.S. at 248). When considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby*, 477 U.S. at 255.

### III.  ANALYSIS

HUD's motion presents two defenses. First, it argues that the complaint fails to state a claim based on the failure to grant a lateral transfer or reassignment, because such a failure, without more, is not an adverse employment action for purposes of Title VII. Second, it argues that Plaintiff failed to timely exhaust his administrative remedies with respect to three of the four allegedly discriminatory actions. The Court will address these arguments in turn.

**A.  The Lateral Reassignment and Transfer Requests**

"Title VII provides that '[a]ll personnel actions affecting employees . . . in executive agencies . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin.'" *Weber v. Battista*, 494 F.3d 179, 182 (D.C. Cir. 2007) (quoting 42 U.S.C. § 2000e-16(a)). To allege a prima facie case of employment discrimination under Title VII based on indirect evidence, "a plaintiff must show that he 'is a member of a protected class,' that

4

he 'suffered an adverse employment action,' and 'that the unfavorable action gives rise to an inference of discrimination.'" *Youssef v. FBI*, 687 F.3d 397, 401 (D.C. Cir. 2012) (quoting *Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002)).

Not all unwelcome actions by an employer count as adverse employment actions. The Court of Appeals has held that "an employee suffers an adverse employment action if he experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002); *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."). In contrast, "purely subjective injuries, such as dissatisfaction with a reassignment, public humiliation, or loss of reputation, are not adverse actions." *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006) (quoting *Forkkio*, 306 F.3d at 1130-31) (quotation marks omitted).

At least for present purposes, HUD does not dispute that the complaint states claims based on Plaintiff's alleged non-selections to fill the vacancies advertised in February and May 2012. It argues, however, that the complaint fails to state claims based on HUD's alleged failure to grant the Plaintiff a lateral transfer or reassignment. As HUD correctly observes, the denial of a lateral transfer or reassignment is not, without more, an adverse employment action for purposes of Title VII. *See Brown v. Brody*, 199 F.3d 446, 455-57 (D.C. Cir. 1999); *Stewart v. Ashcroft*, 352 F.3d 422, 426-27 (D.C. Cir. 2003) ("[I]n *Brown* we recognized that while generally lateral transfers, or the denial of them, could not be considered adverse employment

actions, there are circumstances where they could be."). Rather, "a plaintiff who is made to undertake or who is denied a lateral transfer—that is, one in which [he] suffers no diminution in pay or benefits—does not suffer an actionable injury unless there are some other materially adverse consequences affecting the terms, conditions, or privileges of [his] employment or [his] future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm." *Brown*, 199 F.3d at 457. Here, HUD argues that Plaintiff has failed to allege any loss of pay or benefits or any other adverse employment action, and that, accordingly, his lateral transfer claims should be dismissed. Dkt. 4 at 9-10.

The type of "tangible employment action" that is actionable under Title VII typically "inflicts direct economic harm" on the plaintiff. *See Burlington Indus.*, 524 U.S. at 762-63. But this is not invariably true. Most notably, "reassignment with significantly different responsibilities," even without any reduction in pay or benefits or other direct economic loss, may constitute an adverse employment action, *Forkkio*, 306 F.3d at 1131, as may the loss or diminution of supervisory or programmatic duties, *Czekalski v. Peters*, 475 F.3d 360, 364-65 (D.C. Cir. 2007); *Stewart*, 352 F.3d at 426. The question whether a reassignment—or denial of a reassignment—rises to the level of an adverse employment action, moreover, is often highly fact dependent. For this reason, the Court of Appeals has held that the issue "is generally a jury question." *Czekalski*, 475 F.3d at 365. There is also a "critical difference" in the standards district courts should apply at the motion to dismiss and motion for summary judgment stages in evaluating whether an alleged adverse employment action falls within the scope of Title VII. *Gordon*, 778 F.3d at 163. At the motion to dismiss stage, "'the circumstances of th[e] case'" are often unknown "'because no discovery has taken place.'" *Id.* at 163 (quoting *Hunter v. District of Columbia Child and Family Services Agency*, 710 F. Supp. 2d 152 (D.D.C. 2010)).

6

Yet, even at the motion to dismiss stage, a plaintiff must satisfy minimal standards for alleging some material adverse employment action. "[D]etailed factual allegations" are not required, *Twombly*, 550 U.S. at 555, but a plaintiff must at least "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678. Here, the complaint fails to allege any facts that would support an inference that the alleged lateral transfer denials constituted the type of adverse employment action required to state a claim under Title VII. The complaint alleges that Plaintiff suffered stress, anxiety, and related medical conditions, "financial stress from his failed attempts to move to Boston," "fear of reprisal and discrimination," "embarrassment, low self-esteem, damage to his personal and professional reputation, a loss of earnings, and considerable mental distress," *see* Compl. ¶¶ 57, 65. Most of these allegations, however, assert the kinds of injuries that the Court of Appeals has held are insufficient as a matter of law. As the Court of Appeals has explained, "mere idiosyncracies of personal preference," "[p]urely subjective injuries, such as dissatisfaction with a reassignment," and "public humiliation or loss or reputation" will not suffice. *Forkkio*, 306 F.3d at 1130-31 (quotation marks omitted); *see also Holcomb*, 433 F.3d at 902 (same).

A loss of earnings can, of course, constitute an actionable injury, but an employer's failure to grant a "lateral" transfer or reassignment from one position to a similar position at the same grade, *see* Compl. ¶¶ 20, 30, 42, would not normally reduce an employee's earnings. Here, the Plaintiff merely alleges loss of income with no elaboration or context. He does not allege that the Boston position paid a higher salary or provided more generous benefits; that he lost "future employment opportunities," *Forkkio*, 306 F.3d at 1131; that he lost valuable training opportunities; or any other factual basis for concluding that he lost earnings, benefits, financial

7

rewards, or any other source of income as a result of the conduct alleged in the complaint. Although Plaintiff is not required to allege facts such as these in detail, *Twombly*, 550 U.S. at 555, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678.  Because the complaint is devoid of *any* factual content that would allow the Court to infer that the denials of Plaintiff's requests for a lateral transfer constituted "adverse employment actions" under the governing case law, it fails to state a claim based on those denials.  *See Casey v. Mabus*, 878 F. Supp. 2d 175, 184 (D.D.C. 2012) (dismissing discrimination claim because "allegations regarding denial of training are simply insufficient to establish an adverse employment action" absent "some concrete factual allegation that [plaintiff's] training deficit imposed a tangible harm on the terms, conditions, or privileges of her employment"); *Jackson v. Acedo*, 2009 U.S. Dist. LEXIS 75892, *14-15 (D.D.C. 2009) (dismissing discrimination claim because an allegation that plaintiff's employer denied her request for a schedule change was insufficient to support an inference that she suffered an adverse employment action).

In his opposition to HUD's motion, Plaintiff argues that he was harmed by the denial of a lateral transfer because the Boston position "involved greater supervisory duties, responsibilities, and prestige, and would have certainly furthered his career." Dkt. 5 at 12.  An allegation that Plaintiff was denied an opportunity for significantly greater supervisory duties or responsibilities might well be sufficient to state a claim.  But that is not what the complaint says.  Indeed, the complaint does not allege any significant advantages to the Boston position, other than location, over the position Plaintiff already held at HUD's headquarters.  *Cf. Pitts v. Howard Univ.*, 13 F. Supp. 3d 14, 20 (D.D.C. 2014) (holding that allegations that a reassignment reduced the plaintiff's direct reports "by over 80%, . . . accompanied by diminished responsibilities," sufficed

to defeat the defendant's motion to dismiss). To the contrary, to the extent that any inferences might be drawn from the scant factual allegations actually contained in the complaint, it appears that the Boston position involved *fewer* supervisory duties and responsibilities. Plaintiff alleges that he supervised between six and eight subordinate auditors in D.C., *see* Compl. ¶ 21, while there were only four subordinate auditors in Boston, *see* Compl. ¶ 47. If, in fact, the Boston position "involved greater supervisory duties, responsibilities, and prestige," as Plaintiff asserts in his opposition brief, Dkt. 5 at 12, he needs to amend his complaint to include those allegations. As currently pled, however, the complaint contains no such allegations.

Plaintiff also invokes *Stewart v. Ashcroft*, 352 F.3d 422, 426-27 (D.C. Cir. 2003), which held that the denial of a lateral transfer from one Senior Executive Service ("SES") position to another can constitute an adverse employment action. The minimal facts alleged here, however, fall far short of those in *Stewart*. *Stewart* explained that lateral transfers are not normally considered adverse employment actions, but "[w]hat sets this case outside the norm is the structure of the SES," *see id.*, because SES positions have similar pay and benefits while differing greatly in duties and potential for career advancement, *see id.* The plaintiff in *Stewart* experienced an adverse employment action because he was denied a transfer to "his supervisor's job." *See id.* at 427. As discussed above, Plaintiff alleges no facts supporting the inference that the Boston position was superior to the position he already held. Nor does he allege any other circumstances that might "set[ ] this case outside the norm." *See id.* at 426-27. Indeed, the closest the complaint comes to setting the Boston position apart from the position Plaintiff held at HUD's headquarters is the allegation that a HUD memorandum described the Boston position as a "critical supervisory position[ ]." Compl. ¶ 25; *see* Dkt. 5 at 12. The allegation that HUD used the word "critical" in one memorandum, however, provides an insufficient basis—standing

9

alone—to allege that Plaintiff suffered an adverse employment action. The complaint, for example, never alleges that this was a meaningful distinction or that the responsibilities or duties of the two positions were "significantly different," *Forkkio*, 306 F.3d at 1131; *compare Czekalski*, 475 F.3d at 364-65 (before reassignment plaintiff supervised several hundred employees or contractors; after reassignment plaintiff supervised fewer than ten employees).

Plaintiff argues that at some point after the agency denied him a lateral transfer, he lost his supervisory responsibilities and "now supervises no staff at all." *See* Dkt. 5 at 12; *see also Czekalski*, 475 F.3d at 365 ("[w]ithdrawing an employee's supervisory duties . . . constitutes an adverse personnel action" (quotation marks omitted)). If the complaint alleged that the denial of the requested transfer directly resulted in Plaintiff's loss of supervisory responsibility, it would likely suffice. But it contains no such allegation. To the contrary, as previously noted, it appears to allege that the Boston position involved fewer supervisees. Moreover, Plaintiff himself asserts that his supervisory duties were withdrawn as "*a result of* the Agency's *subsequent* realignments and reorganizations." Dkt. 5 at 3 (emphases added). Again, if there is some direct connection between the denial of Plaintiff's transfer and his loss of supervisory responsibility, he needs to allege the relevant facts in his complaint.

Finally, Plaintiff argues that HUD waived any argument that its denials of his requests for lateral transfer were not adverse employment actions, because with respect to "both of [Plaintiff's] requests" HUD's administrative decision "stated that Plaintiff met his *prima facie* claim with the exception of proving comparator evidence." *See* Dkt. 5 at 9-10. Plaintiff's opposition elides the distinction between HUD's affirmative defense of untimely exhaustion, which can be waived, *see Bowden v. United States*, 106 F.3d 433, 438 (D.C. Cir. 1997), and a plaintiff's burden of alleging a sufficient claim under Title VII. Plaintiff, moreover,

mischaracterizes the administrative decision, which did not concede that he alleged an adverse employment action based on the denial of a lateral transfer or reassignment. To the contrary, it merely stated that he "*arguably* satisfied the second element concerning an adverse employment action, as [he was] not allowed to transfer to Boston," Admin. Decision 14 (emphasis added), but concluded that his discrimination claims failed for other reasons, *id.* at 14-16.

For the reasons stated above, the Court grants HUD's motion in part, and dismisses the claims based on the denial of Plaintiff's lateral transfer and reassignment requests.[2] Plaintiff, however, may attempt to address the deficiencies in his complaint by filing an amended complaint within 20 days of this Memorandum Opinion.

**B. Timely Exhaustion of Administrative Remedies**

HUD also argues that Plaintiff failed to timely exhaust his administrative remedies with respect to three of the four allegedly discriminatory actions. *See* Dkt. 4 at 5-7. Because the Court has concluded that Plaintiff's lateral transfer claims must be dismissed under Rule 12(b)(6), it is unnecessary to address whether those claims were timely exhausted. Moreover, because HUD does not dispute that Plaintiff timely exhausted his remedies with respect to his second non-selection for the advertised position, it is also unnecessary to address whether that claim was timely exhausted. *See id.* The only question before the Court, then, is whether the claim based on the first non-selection was timely exhausted. As both parties cite to and rely on additional documents not incorporated in the complaint, the Court will act on HUD's alternative

---

[2] Plaintiff asks the Court either to resolve HUD's motion under Rule 12(b)(6) or to defer summary judgment pending discovery. *See* Dkt. 5 at 13 (citing Rule 56(d)). Because the Court concludes that the complaint fails to state a claim based on the denials of the lateral transfer and reassignment requests, there is no need to apply the summary judgment standard or to postpone summary judgment while the parties engage in discovery.

motion for partial summary judgment under Rule 56.  As explained below, the Court concludes that HUD has failed to carry its burden of demonstrating that it is entitled to prevail on this defense on summary judgment.

A federal employee who believes that he or she has been subjected to unlawful discrimination "must initiate contact with a[n EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1).  "'Because timely exhaustion of administrative remedies is a prerequisite to a Title VII action against the federal government,' a court may not consider a discrimination claim that has not been exhausted in this manner absent a basis for equitable tolling." *Steele*, 535 F.3d at 693 (quoting *Stewart*, 352 F.3d at 426).  The 45-day time limit may be tolled if the employee "did not know and reasonably should not have known that the discriminatory matter or personnel action occurred" until a later time.  29 C.F.R. § 1614.105(a)(2).  "In such a case, the 45-day clock is tolled until the aggrieved employee has a 'reasonable suspicion' that she has been the victim of discrimination." *Saunders v. Mills*, 842 F. Supp. 2d 284, 290 (D.D.C. 2012).[3]  "Failure to exhaust administrative remedies is considered an affirmative defense.  As such, the defendant bears the burden of pleading and proving it." *Johnson v. Billington*, 404 F. Supp. 2d 157, 162 (D.D.C. 2005) (quotation marks and citation omitted).  "If the defendant meets its burden," however, "the plaintiff then bears the burden of pleading and proving facts supporting equitable avoidance of the defense." *Bowden*, 106 F.3d at 437.

---

[3] Common-law equitable tolling is also available for Title VII claims, but a plaintiff who satisfies the regulatory requirements, *see* 29 C.F.R. § 1614.105(a)(2), need not satisfy the "more demanding" common-law standard, *see Harris v. Gonzalez*, 488 F.3d 442, 444 (D.C. Cir. 2007).

The undisputed facts establish that Plaintiff did not "initiate[ ] contact with an EEO counselor" about his allegations of discriminatory treatment until August 17, 2012.  Compl. ¶ 53, *see* Dkt. 4 at 15-16 ¶ 7.  Plaintiff, moreover, does not dispute that he learned in mid-May—well over 45 days prior to August 17—that the Boston vacancy was being re-advertised and that he would need to re-apply if he still wanted to be considered for that position, *see* Compl. ¶¶ 42, 43; Dkt. 4 at 15 ¶ 4 & Ex. A.  Based on these facts, HUD argues that "Plaintiff must have known" almost three months before he initiated the EEO counseling process "that he did not receive the position based on the [first] vacancy announcement," Dkt. 4 at 5, and that, accordingly, Plaintiff has failed to exhaust his administrative remedies in a timely manner.

Plaintiff makes three arguments in response.  First, he argues that HUD has waived the defense of untimely exhaustion by reaching the merits of his discrimination claim at the administrative level.  *See* Dkt. 5 at 10-11.  Second, he argues that equitable tolling should apply because he did not suspect discrimination until early August.  *See* 29 C.F.R. § 1614.105(a)(2); *see also* Dkt. 5 at 5-6.  Third, he argues that he did not realize that he had not been selected for the first vacancy until August.  *See* Dkt. 5 at 7-8.

With respect to the waiver argument, the Court of Appeals has explained that "[a]lthough agencies do not waive a defense of untimely exhaustion merely by accepting and investigating a discrimination complaint, [the Court has] suggested that if [agencies] not only accept and investigate a complaint, but also decide it on the merits—all without mentioning timeliness— their failure to raise the issue in the administrative process may lead to waiver of the defense when the complainant files suit."  *Bowden*, 106 F.3d at 438 (citations omitted).  Accordingly, courts in this district have found waiver where the agency offers "no legitimate reason why [it]

failed to raise exhaustion during the administrative process." *See Kriesch v. Johanns*, 468 F. Supp. 2d 183, 187 (D.D.C. 2007) (denying agency's motion to dismiss).

HUD, for its part, argues that no waiver should apply because Plaintiff incorrectly told the EEO Counselor that he first learned of both of the non-selections in August. *See* Dkt. 6, Ex. F at 3; *see also* Admin. Decision 1-2 (similar). According to the EEO Counselor's Report, Plaintiff "stated that he was subjected to discrimination . . . when on August 15, 2012, he learned that he was not selected for the Supervisory Auditor position located in Boston, MA, advertised under vacancy announcement numbers 12-HUDIG-022 and 12-HUDIG-042." Dkt. 6, Ex. F at 3. The administrative decision similarly treats both non-selections as giving rise to a single claim arising on August 15. *See* Admin. Decision 1, 14. That decision, however, also indicates that HUD was aware of the circumstances it relies on in its motion to dismiss, *see* Dkt. 4 at 5, *i.e.*, that Plaintiff was notified in May that the first vacancy had been cancelled and that he needed to reapply, *see* Admin. Decision 3. If HUD concluded that those circumstances supported a finding of untimely exhaustion, it could have said so in the administrative decision. HUD did not do so, and it offers no further explanation for why it failed to raise the issue. The Court, accordingly, agrees with Plaintiff that "the agency now has no legitimate reason to complain about a judicial decision on the merits," *see Bowden*, 106 F.3d at 438-39, and has waived its untimely exhaustion defense, *see Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 86-88 (D.D.C. 2009); *Kriesch*, 468 F. Supp. 2d at 187.

The Court further concludes that even if HUD had not waived its untimeliness defense, there is a material dispute of fact as to whether Plaintiff satisfies the requirements for tolling. *See* 29 C.F.R. § 1614.105(a)(2). Plaintiff argues that he first suspected discrimination in August, after learning that the second Boston vacancy had been cancelled and that similar positions in

14

Columbus and Kansas City had been filled by non-minority candidates. *See* Dkt. 5 at 6-7, Compl. ¶¶ 51, 52. This information, he argues, "further alerted him to the fact that the cancellations of the Boston [auditor] position were discriminatory acts" and "revealed the extent to which the Agency would go to avoid his presence in Boston and raised Complainant's reasonable suspicion of discrimination." Dkt. 5 at 6.

HUD responds that the equitable tolling is unwarranted because Plaintiff "perceived different treatment" several months earlier. Dkt. 6 at 7-9. Most notably, HUD points to Plaintiff's allegation that he was "surprised" that his February 2012 lateral reassignment request was denied, because a similar request made by one of the auditors that he had supervised, who was a white male, was approved in March 2012. *See* Compl. ¶¶ 27, 28, 29, 33; *see also* Dkt. 5, Espinosa Decl. ¶ 7(e). More generally, HUD contends that Plaintiff concedes that "several events . . . led him to believe that he had been discriminated against, includ[ing] emails, comparable job announcements and hires between February 2012 and June 2012." Dkt. 6 at 8.

Fairly read, however, Plaintiff's complaint and declaration paint a very different picture from the one presented by HUD. Plaintiff does not concede that he suspected that he was the victim of discrimination as early as March 2012, but rather that these "prior incidents" caused him to question the justification that he was given in August 2012 for HUD's decision not to fill the Boston position. *See* Dkt. 5, Espinosa Decl. ¶ 7; Compl. ¶¶ 51, 52, 53. Thus, when he was told in August 2012 that the Boston position would not be filled because there were not enough auditors to justify a supervisory position, he questioned why his non-minority subordinate was reassigned to a similar position "to only supervise 4 auditors," or why "two white female employees" were hired as "supervisors in different cities with less experience . . . to positions with a similar number of auditors to Boston." Dkt. 5, Espinosa Decl. ¶ 7. There is a

fundamental difference between a *recent* suspicion that is informed in part by past events, and a *past* suspicion that is merely confirmed by recent events. *Cf. Paredes v. Nagle*, 1982 WL 319, *4 (D.D.C. Jan. 17, 1982) (concluding that the clock started running no later than the date of a statement that the employee felt "discriminated against"); *Hyson v. Boorstin*, 1982 WL 155452, *2 (D.D.C. Dec. 23, 1982) (declining to apply equitable tolling where the employee "expected to be discriminated against before the selection was made and [ ] once the selection was made those suspicions were confirmed"). There is, at a minimum, a disputed issue of fact regarding which scenario best reflects what happened here.

The Court also cannot conclude on the present record that Plaintiff reasonably should have suspected discrimination more than 45 days before contacting the EEO counselor. Although an employee alleging a discriminatory non-selection "reasonably should suspect that there might have been discriminatory reasons for his or her non-selection . . . upon learning that an individual of a different race (or gender, if applicable) was selected," *Armstead v. Jewell*, 958 F. Supp. 2d 242, 246 (D.D.C. 2013), here, no individual was selected for (or transferred to) the Boston position. Plaintiff attests, moreover, that when he was told that the original vacancy announcement was cancelled and the vacancy would be re-advertised, he was also "encouraged" to re-apply and thus "believed that this was a routine administrative issue." Dkt. 5, Espinosa Decl. ¶ 2. Similarly, when he was told that he should file an application in response to the vacancy announcement, rather than seeking a lateral transfer, Plaintiff had no reason to believe that he would not, one way or the other, receive the same consideration for the Boston position, *see* Compl. ¶ 25 (plan was to fill position with internal candidate). Although a plaintiff "cannot wait until 'he has direct proof of the allegedly discriminatory action,'" *Armstead*, 958 F. Supp. 2d at 246 (citation omitted), the regulations toll the 45-day time limit where the plaintiff "did not

know and reasonably should not have known that the discriminatory matter or personnel action occurred," 29 C.F.R. § 1614.105(a)(2).  Drawing all reasonable inferences in Plaintiff's favor, as the Court is obligated to do, *see Liberty Lobby*, 477 U.S. at 248, the Court concludes that there is at least a material dispute of fact whether Plaintiff reasonably should have suspected that the first non-selection was discriminatory more than 45 days before he contacted the EEO counselor. *See, e.g.*, *Hutchinson v. Holder*, 668 F. Supp. 2d 201, 213-14 (D.D.C. 2009) (denying the government's motion to dismiss where there was a genuine issue of fact as to the date plaintiff reasonably suspected discrimination).[4]

The Court, accordingly, **DENIES** HUD's motion for partial summary judgment for failure to timely exhaust administrative remedies.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion to dismiss the claims that are based on the denial of a lateral transfer or reassignment, and **DENIES** the motion for partial summary judgment based on untimely exhaustion.  Plaintiff may file an amended complaint consistent with this Memorandum Opinion within 20 days, and Defendant may respond to the complaint or amended complaint within 40 days of this Memorandum Opinion.

An appropriate Order accompanies this Memorandum Opinion.

Date:  July 13, 2015

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

---

[4] Because the Court denies Defendant's motion for the reasons stated, there is no need to address Plaintiff's argument that he did not realize that he had not been selected for the first vacancy until August.  *See* Dkt. 5 at 7-8.